# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

MARCELLUS WILLIAMS,     )
    )
    **Petitioner-Appellee,**     )
    )
**v.**     )     **Case No. 10-2579**
    )
**DONALD ROPER,**     )
    )
    **Respondent-Appellant.** )

## APPELLEE'S PETITION FOR REHEARING AND SUGGESTION FOR REHEARING *EN BANC*

COMES NOW appellee, Marcellus Williams, by and through counsel, pursuant to F.R.A.P. 35 and 40, and respectfully petitions the Court to grant rehearing or, in the alternative, rehearing *en banc* because the panel overlooked or misapprehended material issues of law and fact. Pursuant to Rule 35, rehearing *en banc* is warranted because the panel's decision conflicts with the following decisions of this Court and the United States Supreme Court and consideration by the full court is necessary to secure and maintain uniformity of decisions: *Harrington v. Richter*, 131 S. Ct. 770 (2011); *Panetti v. Quarterman*, 551 U.S. 930 (2007); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Wetzel v. Lambert*, 132 S. Ct. 1195 (2012); and *Simmons v. Luebbers*, 299 F.3d 929 (8th Cir. 2002). In addition, rehearing *en banc* is warranted because this case involves the following questions of exceptional importance:

1.   Whether *Harrington* permits a federal court to deny relief under the unreasonable application clause of § 2254(d)(1) of AEDPA by inventing speculative reasons that could have been utilized by the state courts to support its decision where the state court issued a reasoned decision that rested upon an unreasonable application of clearly established federal law.

2.   Where the state court issues a detailed opinion denying a constitutional claim on grounds that involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts under § 2254(d)(1) and (2), must a federal court review the claim *de novo*.

## SUGGESTIONS IN SUPPORT

As noted by Judge Melloy in dissent and was not disputed by the panel majority, Marcellus Williams was sentenced to death by a jury that did not hear that Mr. Williams "was sexually abused as a child, that he grew up in a violent household with constant physical abuse, that he suffered from borderline mental retardation before dropping out of school, that he grew up and dealt with issues of mental illness, such as post-traumatic shock, depression, and drug addiction." (Slip op. 47) (Melloy, J., dissenting).  There is also no dispute among the members of the panel that Mr. Williams' trial attorneys' penalty phase investigation was constitutionally deficient.  (*Id.* 8, 23-30).

In denying post-conviction relief on appellee's penalty phase ineffectiveness claim, the Missouri Supreme Court issued a detailed, reasoned opinion.  *See Williams v. State*, 168 S.W.3d 433 (Mo. banc 2005).  In addressing this claim, the Missouri Supreme Court stated, *in toto*:

2

> Williams alleges that trial counsel was ineffective for failing to introduce sufficient evidence of his social history during the penalty phase in order to rebut the state's evidence of aggravating factors. At the evidentiary hearing regarding Williams' claim, Williams' counsel testified that the strategy during the penalty phase was to advance the theory of "residual doubt" regarding Williams' actual guilt. By presenting evidence "to show how [Williams] grew up, that he had a family network of a mother and aunts and brothers and sister," counsel attempted to convince the jury to impose life imprisonment based upon residual doubt that Williams had committed the murders. Even though the jury had found beyond a reasonable doubt that Williams was legally guilty, counsel was attempting to persuade the jury to impose a life sentence based upon lingering doubt as to his actual guilt. The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). The motion court found that an abusive childhood defense would have been inconsistent with the penalty phase strategy and would not have changed the jury's sentence. The motion court did not clearly err in denying this claim without an evidentiary hearing.

*Id*. at 443. The district court below correctly scrutinized this state decision under AEDPA and concluded that this decision was defective under § 2254(d)(1) and (2) and granted penalty phase relief. (Resp. Sup. Apdx 387-394).

In reversing the district court, the majority opinion expanded the recent holding in *Harrington v. Richter*, 131 S. Ct. 770 (2011), and looked beyond the substance of the state decision and came up with newly minted reasons to bolster the state court's flawed decision and deny habeas relief under 2254(d)(1). Mr. Williams did not have notice or the opportunity to respond to these theories because the respondent did not advance these hypothetical justifications at any stage of this case.

3

**A.** **Rehearing By The Panel Is Warranted Because The Majority Overlooked Appellee's § 2254(d)(2) Arguments.**

In reversing the district court's grant of penalty phase habeas relief, the panel majority analyzed the case solely under the unreasonable application clause of § 2254(d)(1). (Slip op. 8-23). The panel overlooked or ignored appellee's § 2254(d) arguments, most notably the erroneous factual finding made by the Missouri Courts that presenting the excluded mitigating evidence would have been inconsistent with trial counsel's penalty phase strategy to rely on residual doubt. (*See* Appellee's Br. at 43-49, 51-53).

Although trial counsel Joseph Green indicated that residual doubt was purportedly his primary strategy in avoiding the death penalty, the penalty phase record reveals otherwise. Green never mentioned the concept of residual doubt. As the district court found, Green never argued to the jury that it should spare appellee's life due to lingering doubt of guilt. (Resp. Sup. Apdx. 391, 394). In his opening statement, Green indicated that the defense accepted the jury's verdict. (Tr. 3103-3104). During his closing argument, Green never argued that the jury should return a life verdict, rather than a death sentence because the evidence of guilt was sufficiently weak to leave a lingering doubt of guilt. In fact, at one point in his argument, Green told the jury: "I'm not trying to make you go back and revisit your verdict." (*Id*. 3498). Although he did briefly mention inconsistencies between Cole's and Asaro's accounts of the crime, Green did so only to attack the

4

evidence supporting the statutory aggravating circumstance of avoiding arrest. (*Id.* 3497-3498).

Undoubtedly, a constitutionally effective advocate pursuing a residual doubt theory would have argued to the jury that it should spare the defendant's life because the evidence of guilt was insufficient to remove all doubt that he was the perpetrator.[1]  The absence of any such argument leads to the inescapable conclusion that the state court factual finding that counsel for appellee presented a residual doubt defense during the penalty phase is unreasonable under § 2254(d)(2): the state court here clearly "misstate[d] the record in making their findings [regarding] a material factual issue that is central to [appellee's] claim…". *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

The district court, therefore, properly concluded that the Missouri Supreme Court's finding of a residual doubt strategy constituted an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2).  (Resp Sup. Apdx. 393-394).  Where 2254(d)(2) is satisfied, federal courts must review the underlying constitutional claim *de novo*.  *See Simmons v. Luebbers*, 299 F.3d 929, 937-939 (8th Cir. 2002); *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).  Because of this oversight, panel rehearing is warranted.

---

[1] Green would have had plenty of "ammunition" to argue residual doubt in this case if he truly had a coherent strategy to do so.  He could have, among other things, emphasized Cole and Asaro's lack of credibility, the reward money, and the lack of DNA or scientific evidence linking appellee to the homicide.

5

**B.** **The Panel Majority Erred In Supplying Hypothetical Justifications To Uphold The Reasonableness Of The State Court Decision Which Misreads The Supreme Court's Decision In *Harrington v. Richter* And Conflicts With Other Habeas Jurisprudence.**

Congress made clear its intent to make habeas relief harder to obtain in enacting § 2254(d) of AEDPA. However, Congress clearly did not intend to create a standard that would be impossible to meet. *Miller-El v. Cockrell*, 539 U.S. 322, 340 (2003). This view was reiterated in *Harrington*: "[t]he writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." 131 S. Ct. at 780. The panel majority crossed this line by expanding *Harrington* to apply to reasoned decisions from state courts, which creates an impossibly high standard for obtaining habeas relief that virtually no prisoner will ever be able to satisfy.

In *Harrington*, the Supreme Court held that when a state-court decision "is unaccompanied by an explanation," the appropriate application of the unreasonable application clause of § 2254(d) requires a habeas court to assess the reasonableness of arguments or theories that "could have supported" the state court decision. 131 S. Ct. at 786. However, nothing in the text of the *Harrington* decision suggests that federal courts should employ this "could have supported" analysis when applying § 2254(d) to a reasoned decision by a state court. In fact, *Harrington* appears to have expressly limited the "could have supported" analysis to cases like

6

the one before it, involving a summary unexplained decision: "Under § 2254(d), a habeas court must determine what arguments or theories supported *or, as here*, could have supported, the state court's decision; …." *Id.* at 786 (emphasis supplied).

This interpretation of *Harrington* also finds support in the Supreme Court's response to the prisoner's argument that applying § 2254(d) to summary rulings will encourage state courts to withhold explanations for their decisions to avoid federal scrutiny of their reasoning. The Court expressed doubt that avoiding federal scrutiny had much influence upon whether or not a state court would issue detailed opinions, but did not dispute this contention that prisoners have a higher hurdle in meeting 2254(d) where a summary decision is issued. *Harrington*, 131 S. Ct. at 784.[2]

This is how the Eleventh Circuit has interpreted this language: "When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court 'must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's

---

[2] The panel majority overlooked this language from *Harrington* and held the opposite:

> This approach, which reads "unreasonable" in § 2254(d) "as having reference to the quality of the reasoning process articulated by the state court" would "place the federal court in just the kind of tutelary relation to the state courts that [AEDPA was] designed to end."

(Slip op. 15).

7

Appellate Case: 10-2579     Page: 7     Date Filed: 10/31/2012 Entry ID: 3969954

decision…'". *Johnson v. Sec'y*, DOC, 643 F.3d 907, 910 (11th Cir. 2011) (parenthetical in original).[3] As noted earlier, the panel overlooked the following dispositive language from *Harrington*: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision…" 131 S. Ct. at 786.

The panel majority overlooked the significance of *Harrington's* use of the word "or" before "as here." "Or" is defined as "used to indicate an alternative usually before the last term of a series: hot *or* cold; this, that or the other." *See* American Heritage Dictionary of the English Language, 5th Edition, Page 1238, (2011). Thus, *Harrington's* plain language clearly sanctions two variations of § 2254(d)(1) review, dependent upon whether the state court decision was explained or unexplained.

Quoting this same passage from *Harrington,* the Supreme Court later omitted the "could have supported" language in subsequently addressing whether a detailed state court opinion was unreasonable under § 2254(d)(1) in *Wetzel v. Lambert*, 132 S. Ct. 1195, 1198 (2012)("Under §2254(d), a habeas court must determine what arguments or theories supported …the state court's decision…") (*first ellipses in original*). In *Wetzel*, the Court faulted the Third Circuit for failing to consider the reasonableness of an alternative basis for the state court's decision

---

[3] This reading of *Harrington* has also been recognized in *Scanlon v. Harkleroad*, 467 Fed. Appx. 164; 2012 U.S. App. LEXIS 3789 (4th Cir. 2012).

8

Appellate Case: 10-2579     Page: 8     Date Filed: 10/31/2012 Entry ID: 3969954

that was contained in the state court opinion, and did not raise hypothetical justifications that were not expressly articulated by the state court. *Id.* at 1198. In prior decisions where the prisoner prevailed under § 2254(d)(1), the Supreme Court also limited its analysis to the actual reasoning employed by the state court. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 397-399 (2000); *Wiggins v. Smith*, 539 U.S. 510, 529-531 (2003).

The panel majority also relied on *Premo v. Moore*, 131 S. Ct. 733 (2011) to support its expansive interpretation of *Harrington*. However, Judge Melloy, in dissent, correctly noted:

> The majority asserts that *Premo v. Moore, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011)*, supports its position that deference to unstated hypothetical conclusions is required even in the face of clearly articulated but unreasonable applications of Supreme Court precedent. **The United States Supreme Court in *Premo*, however, expressly characterized the state-court judgment under review as being indeterminate in its rationale. *Id.* at 740 ("The state court did not specify whether this [rejection of a Strickland claim] was because there was no deficient performance under Strickland or because Moore suffered no Strickland prejudice, or both.").** The Supreme Court did not suggest that it was disregarding a state court's articulation of an unreasonable application of clearly established Supreme Court precedent. In fact, nothing in the lower state court opinion in the *Premo* case as quoted by today's majority seems to suggest an unreasonable application of any Supreme Court precedent. In any event, I find it unnecessary to look behind the Supreme Court's own clear characterization of the state court record in *Premo*.

(Slip op. 39).

9

2254(d) must be applied in a manner that does not eliminate the viability of the Great Writ. It is clear that § 2254(d) may preclude a federal court from granting relief on a claim that it would independently find meritorious. *Harrington*, 131 S. Ct. at 785. Examining the reasonableness of a state court's substantive analysis of a claim is qualitatively different from conjuring up every hypothetical theory that could possibly support the denial of relief on a constitutional claim.

Neither *Harrington* itself nor any other Supreme Court decision has indicated that *Harrington* permits a federal court to ignore the underpinnings of a flawed state court adjudication under 2254(1) when the state court has issued a detailed opinion. The foundation of the panel majority's opinion that the state court could have reasonably concluded appellee did not meet the *Strickland* prejudice test was premised upon pure speculation, which finds no support in the text of the Missouri Supreme Court's decision. For instance, the majority noted:

- "The state court, however, reasonably **could have** questioned the weight of Williams's proposed mitigating evidence," (Slip op. 12) (emphasis added);

- "**For all we know**, the postconviction court reached its conclusion of no prejudice after weighing the new mitigating evidence and the aggravating factors, just as we conclude it reasonably could have done." (Slip op. at 14) (emphasis added); and,

- "Just as there is **more than one way to skin a cat**, there often is more than one way to resolve an appeal, and not every possible approach makes it into an opinion. A court may well leave the existence of

10

alternative grounds unstated, because discussion of those grounds is unnecessary to the decision." (Slip op. at 19) (emphasis added).

While there may be more than one way to "skin a cat," it is illogical and contrary to the text of 2254(d)(1) to ignore the substance of the state court ruling because this is precisely how the state court chose to "skin the cat." It was also inappropriate for the panel to employ the phrase "for all we know," because, before the hypothetical justifications for the state court's decision were articulated by the panel majority, everyone did know, because the Missouri Supreme Court issued a detailed opinion.

*Strickland* requires a court to assess counsel's performance and the prejudice based on counsel's actual conduct, not a hypothetical scenario. 466 U.S. at 690 ("a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct"); *Wiggins v. Smith*, 539 U.S. 510, 526-527 (2003) ("post-hoc rationalizations of counsel's conduct" cannot justify failure to investigate; court must rely on "an accurate description of [counsel's] deliberations prior to sentencing."). In *Harrington*, the Supreme Court reaffirmed that "courts may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions." 131 S. Ct. at 790, *citing Wiggins,* at 526-527. The majority's reliance on contrived justifications that were not relied upon by the state courts is the ultimate "*post hoc* rationalization."

11

As noted by Judge Melloy, "the fact remains that the majority today expands the scope of AEDPA deference beyond the limits previously imposed by statute or by Supreme Court precedent. Even if the majority is correct that this newly articulated and greater degree of AEDPA deference may someday become the next step in the Supreme Court's habeas jurisprudence, I do not share the majority's willingness to pioneer a path for this type of broader sanctioning of unreasonable applications of existing law." (Slip op. p. 39).

**C.    Rehearing Or Rehearing *En Banc* Is Necessary Because The Panel Majority's § 2254(d) Analysis Conflicts With Supreme Court Precedent.**

All three members of the panel either explicitly or implicitly found that the Missouri Supreme Court's decision addressing appellee's ineffectiveness claim was unreasonable under 2254(d).  In such situations, several Supreme Court decisions in post-AEDPA habeas cases indicate that where a state prisoner is able to satisfy 2254(d)'s "contrary to" or "unreasonable application" clause, a federal habeas court must then review the state prisoner's claim *de novo*.  *See Lafler v. Cooper*, 132 S. Ct. 1376, 1389-1390 (2012).

The panel majority's method of analysis also cannot be reconciled with the Supreme Court's decision in *Panetti v. Quarterman*, 551 U.S. 930 (2007).  In *Panetti*, the court stated: "When a state court's adjudication of a claim is dependent upon an antecedent unreasonable application of federal law, the requirement set

12

Appellate Case: 10-2579     Page: 12     Date Filed: 10/31/2012 Entry ID: 3969954

forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Id*. at 953.

The Missouri Supreme Court's decision that the mitigating evidence that was not discovered or presented would have been inconsistent with a residual doubt strategy unreasonably applied *Wiggins* because that court rejected an almost identical argument by the state of Maryland in that case in evaluating *Strickland* prejudice. 539 U.S. at 535. As noted earlier, this finding also constitutes an unreasonable finding of fact under 2254(d)(2). In light of material flaws in the Missouri Supreme Court's analysis, 2254(d) is no impediment to relief and the panel erred in not reviewing the underlying claim *de novo*. *Simmons*, 299 F.3d at 937-939. Due to this clear conflict with *Panetti* and *Simmons*, rehearing or rehearing *en banc* is warranted.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, rehearing or, in the alternative, rehearing *en banc* should be granted.

13

Respectfully submitted,

/s/ *Kent E. Gipson*
KENT E. GIPSON, Mo. Bar #34524
121 East Gregory Blvd.
Kansas City, Missouri 64114
816-363-4400 / fax 816-363-4300
kent.gipson@kentgipsonlaw.com

-and-

/s/ *Laurence E. Komp*
LAURENCE E. KOMP, Mo. Bar #84430
P.O. BOX 1785
Manchester, MO 63011
636-207-7330 / fax 636-207-7351
lekomp@swbell.net

ATTORNEYS FOR PETITIONER-
APPELLEE, CROSS-APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and sent to the following counsel of record for respondent, via the ECF system on this 31st day of October, 2012, Mr. Michael Joseph Spillane, Assistant Attorney General, P.O. Box 899, Jefferson City, Missouri 65102

/s/Kent E. Gipson
Attorney for Petitioner

14